1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAY LEE VAUGHN, SR.,                       No.  2:14-cv-2235 MCE KJN P

12              Plaintiff,

13        v.                                    ORDER AND FINDINGS &
                                                RECOMMENDATIONS
14   HOOD, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff filed his civil rights

18   complaint, pursuant to 42 U.S.C. § 1983, on September 25, 2014.  (ECF No. 1.)  Plaintiff alleges

19   that defendants Hood and Rolland failed to protect plaintiff on August 25, 2013, in violation of

20   the Eighth Amendment, by knowingly ordering plaintiff and his known enemy into plaintiff's

21   cell, resulting in plaintiff being assaulted while in restraints.[1]  Defendants move to dismiss this

22   action because they contend it appears from the face of the complaint and its exhibits that plaintiff

23   failed to exhaust his administrative remedies prior to filing the instant action.

24        As set forth below, the undersigned recommends that defendants' motion to dismiss be

25   granted.

26   ////

27   _____

28   [1]  Plaintiff included no charging allegations against defendant Warden Foulk, who was dismissed
     from this action on January 16, 2015.  (ECF No. 23.)

1

1  I. <u>Rule 12(b)(6) Standards</u>

2        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

3  "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In

4  considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

5  must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89

6  (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins v.</u>

7  <u>McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir.

8  1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

9  than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

10  cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other words,

11  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

12  statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Furthermore, a claim

13  upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at 570.

14  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

15  draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556

16  U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

17  of a motion to dismiss for failure to state a claim.  <u>Hal Roach Studios v. Richard Reiner & Co.</u>,

18  896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

19        A motion to dismiss for failure to state a claim should not be granted unless it appears

20  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

21  entitle him to relief.  <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984).  In general, pro se

22  pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

23  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  <u>Bretz</u>

24  <u>v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

25  interpretation of a pro se complaint may not supply essential elements of the claim that were not

26  pled.  <u>Ivey v. Board of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

27  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only

28  allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

2

1   subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899

2   (9th Cir. 2007) (citation and quotation marks omitted).

3   II. Analysis

4        A. Legal Standard

5        The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

6   provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

7   § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

8   facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

9   Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516,

10  524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of

11  confinement, whether they involve general circumstances or particular episodes, and whether they

12  allege excessive force or some other wrong. Porter, 534 U.S. at 532.

13       Proper exhaustion of available remedies is mandatory. Booth v. Churner, 532 U.S. 731,

14  741 (2001). "Proper exhaustion demands compliance with an agency's deadlines and other

15  critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 95-96 (2006). For a remedy to be

16  available, there must be the "possibility of some relief. . . ." Booth, 532 U.S. at 738. Relying on

17  Booth, the Ninth Circuit has held:

18           [A] prisoner need not press on to exhaust further levels of review
             once he has received all "available" remedies at an intermediate
19           level of review or has been reliably informed by an administrator
             that no remedies are available.
20

21  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005).

22       Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

23  and prove." Jones v. Bock, 549 U.S. 199, 204, 216 (2007). To carry this burden,

24           a defendant must demonstrate that pertinent relief remained
             available, whether at unexhausted levels of the grievance process or
25           through awaiting the results of the relief already granted as a result
             of that process. Relevant evidence in so demonstrating would
26           include statutes, regulations, and other official directives that
             explain the scope of the administrative review process;
27           documentary or testimonial evidence from prison officials who
             administer the review process; and information provided to the
28           prisoner concerning the operation of the grievance procedure in this

3

case. . . .  With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

Brown, 422 F.3d at 936-37 (citations omitted).

A motion asserting an affirmative defense such as failure to exhaust may be brought under Rule 12(b)(6) or Rule 56 depending on whether the factual predicate for the motion is based on the text of the pleading or instead depends upon evidence submitted with the motion.  See Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim."); Bock, 549 U.S. at 215 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").  The administrative process is exhausted only after the inmate complies with all relevant prison grievance procedures and receives a decision from the third level.  Ngo, 548 U.S. at 95-96.

B.  Administrative Appeal Process

The California Department of Corrections and Rehabilitation ("CDCR") provides inmates the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Following amendments that took effect January 28, 2011, California prisoners are required to proceed through three levels of appeal to exhaust the administrative appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the CDCR.  See 15 Cal. Code Regs. § 3084.1-3084.9.[2]  A final decision from the Director's level of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a).  See Lira v. Herrera, 427 F.3d 1164, 1166-67 (9th Cir. 2005); see also Cal. Code Regs. tit. 15, § 3084.7(d)(3) (as amended Dec. 13, 2010).

---

[2] The informal resolution level was eliminated.  See Cal. Code Regs. tit. 15, § 3084.7 (as amended Dec. 13, 2010).

To initiate an appeal, the inmate must submit a CDCR Form 602 describing the issue to be appealed and the relief requested to the appeals coordinator's office at the institution.  Id. § 3084.2(a)-(c).  An inmate must submit the appeal within 30 calendar days of:  (1) the occurrence of the event or decision being appealed; or (2) first having knowledge of the action or decision being appealed; or (3) receiving an unsatisfactory departmental response to an appeal.  Id. § 3084.8(b).  Specific time limits apply to the processing of each administrative appeal.  See Cal. Code Regs. tit. 15, § 3084.8.  Absent any specific exceptions, the first and second level administrative responses are required to be completed "within 30 working days from [the] date of receipt by the appeals coordinator," and a third level response is due within 60 working days from the date the appeal is received by the appeals chief.  Id.

However, appeals concerning staff complaints are processed differently.  California Code of Regulations Title 15, § 3084.5(b) (4) states:

> When an appeal is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard that could be considered misconduct as defined in subsection 3084(g), whether such misconduct is specifically alleged or not, the matter shall be referred pursuant to subsection 3084.9(i) . . ., to determine whether it shall be:

> (A) Processed as a routine appeal but not as a staff complaint.

> (B) Processed as a staff complaint appeal inquiry.

> (C) Referred to Internal Affairs for an investigation/inquiry.

Id., § 3084.5(b)(4).  An inmate appeal alleging staff misconduct must be accompanied by a Rights and Responsibility Statement.  Id. § 3084.9(i).  "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days."  Id. § 3084.9(i)(3).  "Only after the appeal has been reviewed and categorized as a staff complaint by the hiring authority or designee shall it be processed as a staff complaint."  Id. § 3084.9(i)(1).  When an appeal that is classified and accepted as a staff complaint includes other non-related issues, "the appeals coordinator shall notify the inmate that any other appeal issue(s) may only be appealed separately and therefore resubmission of those issues is required if the intention is to seek resolution of such matters."  Id. § 3084.9(i)(2); see also id. § 3084.5(b)(5).

5

1  Processing an appeal as a staff complaint does not preclude a prisoner from exhausting

2  administrative appeals to the Director's Level.  Cal. Code Regs. tit. 15, § 3084.1(b).

3      An appeal may be cancelled if it is untimely.  Cal. Code Regs. tit. 15, § 3084.6(c)(4).

4  However, if the issue is ongoing, the inmate may appeal any time during the duration of the

5  event.  Id., § 3084.6(c)(4).  The appeals coordinator must notify the inmate of the reason for the

6  cancellation of the appeal.  Id., § 3084.5(b)(3).  Once cancelled, the appeal shall not be accepted

7  unless a determination is made that the cancellation was made in error or new information is

8  received.  Id., §§ 3084.6(e), 3084.6(a)(3).  A "cancellation or rejection" of an appeal "does not

9  exhaust administrative remedies."  Id., §§ 3084.1(b); 3084.6.

10     An inmate can appeal a cancellation decision separately by appealing the application of

11  § 3084.6(c) to his appeal; if he prevails on that separate appeal, the cancelled appeal later can be

12  considered at the discretion of the appeals coordinator or the third level appeals chief.  Id.,

13  §§ 3084.6(a)(3), 3084.6(e).

14     C.  The Parties' Positions

15     Defendants argue that the court should dismiss this action because this is one of the rare

16  cases in which it is clear from the face of the complaint and its exhibits that plaintiff failed to

17  exhaust his administrative remedies prior to filing the instant action.  Defendants point out that

18  despite stating that he exhausted his administrative remedies, plaintiff attached the appeals and

19  responses to his complaint, and the appeal was cancelled at the third level of review because the

20  appeal was not timely-filed.  (ECF No. 25-1 at 1.)  Thus, defendants argue that it is evident from

21  the exhibits appended to plaintiff's complaint that he did not exhaust his administrative remedies

22  as to the claims in this lawsuit.

23     On March 23, 2015, plaintiff filed an opposition to the motion.  Plaintiff first argues that

24  defendants are required to file their motion as a motion for summary judgment, citing Albino v.

25  Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).[3]  (ECF No. 26 at 1, 7.)  Second, plaintiff argues that

26  _____

27  [3]  Plaintiff cites Albino using the citation 697 F.3d 1023, 1031, which issued in 2012, but he
    refers to 2014, and appears to object to defendants' Albino citation as 747 F.3d 1162.  The more
    current citation to Albino is Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc), which is

28  binding on this court in the context of exhaustion of administrative remedies under the PLRA.

6

1  the appeals coordinator has discretion to accept appeals, and argues that the appeals coordinator

2  accepted plaintiff's first two appeals, and therefore the third level appeal was wrongfully

3  cancelled.  Plaintiff argues that the court should accept the cancellation as exhaustion of his

4  administrative remedies because plaintiff could not take such appeal any further.  Plaintiff also

5  appears to contend that he was not required to further pursue his remedies to the third level of

6  review because his first and second level appeals were both partially granted.  (ECF No. 26 at

7  13.)  Third, plaintiff appears to contend that he filed a timely staff complaint on August 26, 2013,

8  by first filing an informal appeal to the warden, who was then required to turn it into a staff

9  complaint under § 3391(c).  (ECF No. 26 at 12, 14.)  Fourth, plaintiff contends that his appeal

10  was not untimely filed because the appeal was submitted under "extraordinary circumstances,"

11  which gives prison officials discretion to waive an untimely appeal, and enabled plaintiff to file

12  his appeal at any time during the extraordinary event.  (ECF No. 26 at 11.)  In an attachment to

13  his complaint, plaintiff states that the third level appeal was cancelled in error due to ongoing

14  staff abuse.  (ECF No. 1 at 30.)  Fifth, plaintiff contends that his allegations of staff misconduct

15  "automatically" gives the appeal/complaint "emergency status."  (ECF No. 26 at 15.)

16        In reply, defendants argue that because plaintiff's arguments are based on misapplication

17  of Albino and Ngo, the court should grant defendants' motion to dismiss.  Specifically,

18  defendants first contend that their motion to dismiss is proper under Albino because plaintiff's

19  complaint and exhibits demonstrate that plaintiff failed to properly and fully exhaust his

20  administrative remedies prior to suit.  Second, defendants argue that plaintiff's reliance on an

21  "ongoing issue" is unavailing because the instant complaint is based on a single incident

22  occurring on August 25, 2013, when he was assaulted.  Thus, defendants argue that plaintiff was

23  required to file his administrative appeal within thirty days, by September 25, 2013.  Because

24  plaintiff did not submit his appeal until December 2, 2013, the third level appeal was properly

25  cancelled because plaintiff's appeal was untimely.  Cal. Code Regs. tit. 15, § 3084.8(b)(1);

26  3084.6(c)(4).  Third, defendants reiterate that a cancelled appeal does not exhaust administrative

27  remedies, and the fact that the first two appeals were accepted is a non-issue because such

28  acceptance "does not preclude the next level of review from taking appropriate action, including

7

1   . . . cancellation of the appeal." (ECF No. 28 at 3, quoting Cal. Code Regs. tit. 15, §

2   3084.6(a)(5).) Moreover, plaintiff was informed that he could separately appeal the cancellation

3   if he disagreed with it. (ECF No. 28 at 3, citing ECF No. 1 at 8.) Fourth, defendants argue that

4   plaintiff erroneously filed an informal complaint with the warden rather than filing a timely

5   appeal containing his staff complaint with the appeals coordinator. (ECF No. 28 at 4.)

6   Defendants point out that plaintiff's reliance on the rights and responsibility statement is

7   unavailing because plaintiff signed it on December 2, 2013, long after the warden informed

8   plaintiff he must submit a 602 appeal form. Similarly, defendants note that plaintiff's reliance on

9   § 3391(c) is unavailing because it applies to persons other than an inmate. Cal. Code Regs. tit.

10  15, § 3391(c). Finally, defendants contend that plaintiff's contentions concerning the warden's

11  obligations following receipt of plaintiff's informal request were not included in the complaint,

12  and disregard the fact that the warden expressly informed plaintiff that any informal discussion

13  was insufficient to start the formal appeals process. (ECF No. 28 at 5, citing ECF No. 1 at 12.)

14  Defendants note that plaintiff failed to submit a timely appeal, even after receiving the warden's

15  express instructions.

16          D. <u>Motion to Strike</u>

17          On April 13, 2015, plaintiff filed a sur-reply. On April 20, 2015, defendants filed a

18  motion to strike the sur-reply as unauthorized.

19          The Local Rules provide for a motion, an opposition, and a reply; the Local Rules and the

20  Federal Rules do not provide the right to file a sur-reply. <u>See</u> E.D. Cal. R. 230(b)-(d), ( 1 ).

21  Courts generally view motions for leave to file a sur-reply with disfavor. <u>Hill v. England</u>, 2005

22  WL 3031136, at *1 (E.D. Cal. 2005) (citation omitted). However, district courts have the

23  discretion to either permit or preclude a sur-reply. <u>See</u> <u>JG v. Douglas County School Dist.</u>, 552

24  F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file

25  sur-reply where it did not consider new evidence in reply); <u>Provenz v. Miller</u>, 102 F.3d 1478,

26  1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-

27  movant an opportunity to respond).

28  ////

1    Defendants did not submit new evidence in their reply.  The court did not request or

2  approve the filing of a sur-reply.  Thus, defendants' motion to strike plaintiff's unauthorized sur-

3  reply is granted.

4    E.  Plaintiff's Administrative Appeal HDSP-13-03821

5    Plaintiff signed his appeal on December 2, 2013, which was received by HDSP appeals on

6  December 13, 2013, and identified the subject of his appeal as a "violation of due process rights,

7  endangering inmate life."  (ECF No. 1 at 13.)  Plaintiff added that he was "in fear for his life."

8  (Id.)  In the continuation section, plaintiff set forth his allegations against defendants Rolland and

9  Hood concerning the assault on August 25, 2013.  (ECF No. 1 at 15.)  Plaintiff sought transfer to

10  another institution or SHU, permanent single cell, and requested that further institutional civil

11  violations stop.  (ECF No. 1 at 13.)  Plaintiff signed a Rights and Responsibility Statement on

12  December 2, 2013, alleging misconduct by defendants Rolland and Hood.  (ECF No. 1 at 11.)

13  Plaintiff provided a letter dated December 7, 2013, in which he informed Appeals Coordinator

14  Cornelison that

15    [t]his staff complaint originally started timely 8/26/13 with Warden
      Foulk H.D.S.P. at the informal level, and have been in
16    correspondence of completion of the informal level 11/22/13 with
      Warden Foulk as per Title 15 3084.8(i)(1) - 3084.6(3) also the
17    D.O.M. and inmate may exceed the 30 days in which to file until
      and with exception of Title 15's informal level complete and or
18    completion of all pleading with irrelevant information with staff on
      the issue.  [¶] This staff complaint is being filed at this time.  Please
19    take in account inmate has been rerouted -- transferred. . . .

20  (ECF No. 1 at 22.)

21    On January 29, 2014, the first level appeal was partially granted.  (ECF No. 1 at 13, 17.)

22  Plaintiff was informed that all issues unrelated to the allegation of staff misconduct must be

23  appealed separately and would not be addressed in the response.  (ECF No. 1 at 17.)  The

24  reviewing official noted that staff violated CDCR policy with respect to one or more of the issues

25  appealed.  (ECF No. 1 at 18.)  Plaintiff was then informed as follows:

26    ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN
      NATURE.
27

28    •  As such, the details of any inquiry will not be shared with
         staff, members of the public, or offender appellants.

9

- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.

- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

(ECF No. 1 at 18.)

On March 31, 2014, plaintiff sought second level review, stating he believed he should be given a single cell because staff was retaliating against him because of the appeal. Plaintiff claimed Sgt. Hanks stated that if plaintiff did not rescind the staff complaint "he would do what he had to do," and on March 10, 2014, "R&R staff" took plaintiff's TV and legal work in reprisal. (ECF No. 1 at 14.) In addition to a single cell, plaintiff sought return of his TV, legal documents and pictures, and requested that reprisals stop. (ECF No. 1 at 15.)

On April 28, 2014, plaintiff's second level appeal was partially granted. (ECF No. 1 at 20.) The second level reviewer declined to address plaintiff's new allegations concerning staff retaliation allegedly warranting single cell status, and the taking of his TV and legal work. (ECF No. 1 at 19.) Plaintiff's allegation of staff misconduct was reviewed by the hiring authority and was referred for an appeal inquiry, and because the confidential appeal inquiry was completed, the second level appeal was partially granted. (ECF No. 1 at 20.) Plaintiff was provided the same information under the heading "All Staff Personnel Matters are Confidential in Nature," that was provided in the first level appeal response, including the reminder that plaintiff's administrative remedies would be considered exhausted once a decision was rendered at the third level of review. (ECF No. 1 at 20.)

////

////

1    On May 20, 2014, plaintiff sought third level review, claiming that his

> staff complaint is bigger than it looks, staff members don't deny retaliation, and [plaintiff] did not agree to any type of clause that eliminates adverse behavior by staff.  Because of staff's conduct here, [plaintiff] need[s] a single cell.

(ECF No. 1 at 14.)

On August 12, 2014, plaintiff's third level appeal was cancelled.  (ECF No. 1 at 8, 14.) The reviewer noted that pursuant to § 3084.8(b), plaintiff was required to appeal within 30 calendar days from the date of the incident, August 25, 2013.  (ECF No. 1 at 8.)  The reviewer found that because plaintiff did not file his appeal until December 13, 2013, plaintiff exceeded time limits, and the appeal was cancelled pursuant to § 3084.6.  (ECF No. 1 at 8.)  Although the appeal could not be resubmitted, plaintiff was advised that a separate appeal could be filed on the cancellation decision.  (Id.)  "The original appeal may only be resubmitted if the appeal on the cancellation is granted."  (Id.)

Plaintiff did not appeal the cancellation of this third level appeal.

F.  Discussion

i.  Compliance with Prison Regulations

The exhibits appended to plaintiff's complaint demonstrate that plaintiff wrote the warden to pursue an informal appeal concerning the instant claims rather than initially file a 602 appeal as required by prison regulations.  Although plaintiff adamantly insists that this was the proper procedure, CDCR prison regulations effective in 2011 refute such a position.  As set forth above, to initiate an appeal, plaintiff was required to submit a CDCR Form 602 to the appeals coordinator's office at the institution.  Cal. Code Regs. tit. 15, § 3084.2(a)-(c).  In addition, plaintiff was reminded of this required procedure by the warden in the October 17, 2013 memorandum.  (ECF No. 1 at 12.)  Thus, plaintiff's informal appeal submitted to the warden was not properly filed.[4]

---

[4]  Section 3391(c) is not applicable because the section does not apply to inmates:  "(c) Persons *other than an inmate*, parolee or staff who allege misconduct of a departmental peace officer shall submit a written complaint to the institution head or parole administrator of the area in which the peace officer is employed."  Cal. Code Regs. tit. 15, § 3391(c) (emphasis added).

In addition, despite the 2011 prison regulations and the warden's memorandum, plaintiff waited until December 2, 2013, to complete the 602 appeal form and the Rights and Responsibility Statement.  (ECF No. 1 at 11, 12.)  Indeed, in his accompanying memo, plaintiff appears to concede the untimely filing:  "This staff complaint originally started timely 8/26/13 with Warden Foulk H.D.S.P. at the informal level. . . ."  (ECF No. 1 at 22.)  Plaintiff was assaulted on August 25, 2013, but did not file an appeal concerning the assault until December 13, 2013, over three and a half months later.  Plaintiff was required to submit an appeal on the 602 form within thirty days from the date of the incident.  Cal. Code Regs. tit. 15, § 3084.8(b)(1).  Thus, plaintiff's appeal was not timely filed.  Ngo, 548 U.S. at 94-95 (in order to give prison officials a fair opportunity to resolve a complaint, an inmate must bring that complaint in a timely manner to the officials' attention).  Prisoners must properly exhaust available remedies, meaning they must abide by the institution's rules governing the process.  Ngo, 548 U.S. at 87-90, 94-95.  As the Supreme Court explained:

> a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.

Ngo, 548 U.S. at 95.

Because plaintiff's appeal was not timely filed, prison officials' subsequent cancellation of the third level appeal was proper.  Section 3084.1(b) provides that "[a]ll lower level reviews are subject to modification at the third level of review," and "[e]rroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal."  Cal. Code Regs. tit. 15, § 3084.6(5).  In addition, "a cancellation or rejection decision does not exhaust administrative remedies."  Cal. Code Regs. tit. 15, § 3084.1(b).

////

In the memo accompanying his appeal, plaintiff states that after writing to the warden within the time limits, plaintiff was within his rights to appeal pursuant to § 3084.8(b)(3), which plaintiff claims is why the appeals coordinators accepted the appeal at the first and second levels of review.  (ECF No. 1 at 30.)  However, plaintiff's reliance on § 3084.8(b)(3), which provides that an inmate could appeal within 30 days after "receiving an unsatisfactory departmental response to an appeal filed," is unavailing because his informal filing with the warden was not a 602 appeal filed with the appeals coordinator.  But even if it were so construed, the warden responded on October 17, 2013, and plaintiff did not file his 602 appeal 30 days thereafter.  Rather, plaintiff filed his 602 appeal 57 days later on December 13, 2013.  Thus, plaintiff's argument is unavailing.

Accordingly, plaintiff's statement in his complaint that he exhausted administrative remedies is contradicted by the appended exhibits demonstrating that his appeal was not properly or timely filed pursuant to current CDCR regulations, and the cancellation of his appeal at the third level of review does not constitute proper exhaustion of plaintiff's administrative remedies.

### ii.  "Ongoing Issue"

Plaintiff argues that because his appeal was submitted under "extraordinary circumstances," he could file his appeal at any time.  In an attachment to his complaint, plaintiff stated that during the exhaustion process, "the appeals coordinators knew at that time this incident with staff at [HDSP] was ongoing," and that his witnesses, along with other African American inmates, would testify that HDSP is "known for its racism."  (ECF No. 1 at 30.)

Defendants contend that plaintiff's complaint challenges the single incident on August 25, 2013, and therefore plaintiff was required to file his appeal within thirty days.

"If the issue is ongoing, which may include but is not limited to, continuing lockdowns, retention in segregated housing, or an ongoing program closure, the inmate or parolee may appeal any time during the duration of the event."  Cal. Code Regs. tit. 15 § 3084.6(c)(4).

In his appeal, plaintiff claimed that he was in fear for his life, and alleged that on August 25, 2013, defendants Rolland and Hood had set plaintiff up by moving a documented enemy into plaintiff's cell, resulting in plaintiff's assault and injuries.  However, despite being filed months

13

after the assault, plaintiff included no allegations concerning subsequent threats or ongoing misconduct by defendants Rolland and Hood or any other ongoing issue.  Moreover, in his August 31, 2013 request for interview, plaintiff confirmed he no longer felt safe due to the recent improper cell move that caused him to be assaulted.  (ECF No. 1 at 21.)  Plaintiff did not state he was afraid because of any specific ongoing issue, or subsequent misconduct by defendants.  (Id.)  In his March 31, 2014 request for second level review, plaintiff suggested that Sgt. Hanks retaliated against plaintiff.  Plaintiff's subsequent allegations concerning reprisals failed to identify a perpetrator by name.  But none of the allegations concerning reprisals in plaintiff's requests for second and third level reviews identified defendants Rolland or Hood, or specifically identified facts the court could construe as an "ongoing issue."

Similarly, in the instant complaint, plaintiff does not allege an ongoing violation of his constitutional rights, only raising the August 25, 2013 incident, and challenging the actions of defendants Rolland and Hood on that date.

Moreover, although plaintiff was housed in administrative segregation and retained there for some period of time, the issue in plaintiff's appeal was not plaintiff's retention in administrative segregation, but rather the events leading up to the August 25, 2013 assault.

For all of these reasons, plaintiff's appeal cannot be construed as alleging ongoing acts of misconduct by defendants Rolland and Hood or challenging an "ongoing issue" sufficient to warrant application of the provisions of § 3084.6(c)(4).  Thus, plaintiff was required to appeal the August 25, 2013 incident within thirty days.

### iii. Acceptance of First and Second Administrative Appeals

Plaintiff contends that the acceptance of his appeal at the first and second levels of review constitutes exhaustion.  However, section 3084.6(5) provides that "[e]rroneous acceptance of an appeal at a lower level does not preclude the next level of review from taking appropriate action, including rejection or cancellation of the appeal."  Cal. Code Regs. tit. 15, § 3084.6(5).  Thus, plaintiff's objection that his appeal was accepted for review at the first and second levels of review is unavailing because prison officials at the third level of review were allowed to cancel the appeal.  Indeed, plaintiff argues that prison officials have discretion to accept untimely

1  appeals; such discretion includes the authority to refuse to accept untimely appeals.  Had

2  plaintiff's appeal been accepted at the third level review and denied, the initial untimely appeal

3  would not have precluded review by this court.  See Jones v. Stewart, 457 F.Supp.2d 1131, 1136-

4  37 (D. Nev. 2006) (holding that if, at every level of administrative review available, prison

5  officials review the merits of a grievance that does not meet the applicable procedural rules, such

6  as timeliness, the prisoner has satisfied the administrative exhaustion requirement of Ngo).  Here,

7  however, plaintiff's third level appeal was cancelled because the initial appeal was untimely-filed.

8                          iv.  Cancellation at Third Level

9          Further, plaintiff contends that because he presented his appeal to the third level review

10  and obtained the "appeal head's cancellation," he completed the process and exhausted his

11  claims.  (ECF No. 26 at 10.)  Plaintiff contends that even though he did not receive the relief he

12  sought, his appeal is exhausted, citing Booth, 532 U.S. at 731.  (ECF No. 26 at 6.)  Defendants

13  argue that a cancelled appeal does not exhaust administrative remedies.  (ECF No. 28 at 3.)

14          The administrative process is exhausted only after the inmate complies with all relevant

15  prison grievance procedures and receives a decision from the third level.  Ngo, 548 U.S. at 95-96;

16  see also Sapp v. Kimbrell, 623 F.3d 813, 826 (9th Cir. 2010) (dismissal is appropriate where

17  administrative grievances were properly screened out).  "[A] cancellation or rejection decision

18  does not exhaust administrative remedies."  Cal. Code Regs. tit. 15, § 3084.1(b).

19          Because plaintiff is required to receive a third level decision, not a cancellation, the

20  cancellation of plaintiff's third level appeal cannot serve to exhaust plaintiff's claims.  Plaintiff's

21  reliance on Booth is unavailing because the Supreme Court held that the PLRA requires a

22  prisoner to complete any prison administrative process capable of addressing the inmate's

23  complaint and providing some form of relief, even if the prisoner seeks money damages and such

24  relief is not available under the administrative process.  Booth, 532 U.S. at 740-41.  Thus, under

25  Booth, plaintiff was required to obtain a third level decision because even though he was pursuing

26  a staff complaint, he also seeks money damages.

27  ////

28  ////

1              v. Was Further Relief Available?

2          Plaintiff also appears to argue that because his appeal was granted in part, he did not need

3    to appeal to the third level of review, and did so only as a formality.  (ECF No. 26 at 13.)

4          The instant case is distinguishable from Brown, 422 F.3d at 938, in which the Ninth

5    Circuit concluded that an inmate had sufficiently exhausted his administrative remedies

6    concerning a staff complaint by pursuing it only through the second level of administrative

7    review.  "[N]o further relief was in fact 'available' through the appeals process, although the staff

8    complaint process to which the grievance was directed . . . had not yet run its course" because the

9    staff investigation by the Office of Internal Affairs had already been opened.  Id. at 939.  Brown,

10   however, does not establish a per se rule that the pendency of an internal investigation renders

11   further administrative appeal unavailable.  The result in Brown turned on the fact that the

12   prisoner, unlike the plaintiff here, was not informed that any further review was available to him

13   following the second level response.  Id. at 937.  Indeed, in Brown, the court found that another

14   prisoner, Hall, had not satisfied the exhaustion requirement because he, like the plaintiff here, had

15   been informed that if he was dissatisfied with the second level appeal response, further

16   administrative review was available.  Brown, at 941.  Here, the second level appeal response in

17   plaintiff's case specifically advised him that he must submit his staff complaint appeal up to, and

18   including, the Secretary's/Third Level of Review, and that once a third level decision was

19   rendered, his administrative remedies would be considered exhausted.  (ECF No. 1 at 20.)  In

20   addition, unlike Brown, plaintiff did seek third level review, at which point the appeal was

21   cancelled because he failed to timely file his initial appeal.

22         Thus, plaintiff's failure to obtain a third level decision, rather than a cancellation, renders

23   his claim unexhausted.

24             vi. Emergency Appeal

25         In his complaint, plaintiff claims that his appeal was an emergency appeal under § 3084.9.

26   Defendants contend that plaintiff did not submit his appeal as an emergency appeal, and cannot

27   claim after the fact that the earlier situation was an emergency.  In addition, defendants argue that

28   plaintiff's delay in filing a 602 appeal, while filing other, informal documents, contradicts that it

1    was an emergency.  Moreover, defendants note that plaintiff's appeal fails to include specific

2    allegations to suggest he was in immediate risk of harm, but rather makes vague allegations of

3    reprisals and complains of the loss of his TV.  (ECF No. 25-1 at 7.)

4        Emergency appeals allow an inmate to submit an appeal for faster processing when

5    "regular appeal time limits would subject the inmate or parolee to a substantial risk of personal

6    injury or cause other serious and irreparable harm."  Cal. Code Regs. tit. 15, § 3084.9.

7        Although plaintiff stated he was "in fear for his life," the only specific factual allegations

8    in plaintiff's initial appeal pertain to the events leading up to the August 25, 2013 assault.

9    Moreover, in his request for interview dated August 31, 2013, plaintiff stated that "due to the

10   recent improper cell move that caused him to be assaulted, plaintiff no longer felt safe in this

11   prison, or prison's ad-seg especially."  (ECF No. 1 at 21.)  Plaintiff's vague allegations of

12   subsequent reprisals referenced the taking of his TV and legal documents, but plaintiff included

13   no specific facts suggesting the appeal should be processed on an emergency basis.  Thus,

14   plaintiff's appeal is not properly construed as an emergency appeal under § 3084.9.

15               vii.  Availability of Administrative Remedy Process

16       Plaintiff does not dispute that there is an "existing and generally available" administrative

17   remedy process for state prisoners.  Defendants are not entitled to dismissal if the court

18   determines that the administrative remedy process was effectively unavailable to plaintiff.

19   Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir. 2015); Albino, 747 F.3d at 1172.  In this case,

20   plaintiff filed an appeal that was received by the appeals office, and therefore, the court employs a

21   two-part test to determine whether the administrative remedies were effectively unavailable.

22   Sapp, 623 F.3d at 823-24.

23       First, the court must first determine whether plaintiff's appeal would have sufficed to

24   exhaust his Eighth Amendment claim against defendants Rolland and Hood.  An appeal "suffices

25   to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner

26   seeks redress," and "the prisoner need only provide the level of detail required by the prison's

27   regulations."  Sapp, 623 F.3d at 824; accord Wilkerson v. Wheeler, 772 F.3d 834, 839-40 (9th

28   Cir. 2014).  CDCR's regulations require a description of "the specific issue under appeal and the

17

1    relief requested," and a description of the staff members involved and their involvement.  Cal.

2    Code Regs. tit. 15, § 3084.2(a).  The undersigned finds that appeal #HDSP-D-13-03821 placed

3    prison officials on notice of the specific issue and the staff involved, § 3084.2(a), and no

4    argument to the contrary was made.

5         Next, the inquiry turns to whether staff misconduct or other events rendered the

6    administrative remedy process effectively unavailable.  Williams, 775 F.3d at 1192; Sapp, 623

7    F.3d at 822-23.

8         In his verified opposition to the motion to dismiss, plaintiff did not argue that remedies

9    were unavailable to him or that prison staff interfered with his ability to timely file an appeal.

10   (ECF No. 26, passim.)  Rather, plaintiff defended his decision to file his informal appeal with the

11   warden, and argued that, for various reasons, his 602 appeal was properly and timely filed.

12   Indeed, plaintiff declares that "he is well versed on the proper procedure of filing a staff

13   complaint against staff misconduct and [has] followed proper procedure to the letter."  (ECF No.

14   26 at 14.)

15        In an unverified attachment to his complaint, plaintiff states that he:

16            During the exhaustion of this complaint, the appeals coordinator
             knew at that time this incident with staff at [HDSP] was ongoing.
17           [His] witnesses along with other African American inmates at
             [HDSP] will testify that this prison is known for its racism
18           throughout [CDCR] it is not a secret.  After writing to the warden at
             the time and within the time limitations and receiving an
19           unsatisfactory response, left [him] within [his] rights . . . in an
             attempt to disallow [him] to file this suit, and discourage the
20           exhaustion . . . the third level of appeals has been rejecting or
             cancelling all appeals to violate an inmate's right. . . .  [Plaintiff]
21           had to leave the prison to file [his] complaint.  Witnesses will
             testify that [HDSP] prison staff went beyond their power to stop
22           [inmate] appeals, especially against staff, in these times staff would
             resort to retaliation, such as throwing your food through the tray
23           slot on the floor, or pulling you out of your cell to beat you or set
             you up for harm with other [inmates].  There again is part of the
24           ongoing staff abuse that tried to prevent or stop this complaint.  The
             appeals coordinators there are aware of the racial profiling at that
25           prison along with the staff abuse, so by knowing the rules of the
             appeals process, [accepted] the appeals within its time restraints
26           after all rejection or cancellation at the 3rd level is exhaustion.  The
             exception to the normal time to file this complaint results from Title
27           15 3084.9(1) to file this appeal at [HDSP] at the time of the staff
             abuse would have resulted in substantial risk of personal injury or

28

other serious and irreparable harm.  3084.9(A) threat of death or injury due to enemies or other placement concerns.[5]

At the time of filing this complaint, procedures were met timely by first filing to the warden, Captain, of ongoing staff abuse (see exhibits) 3084.8(b).

(ECF No. 1 at 30-31.)  This document is marked, "Cover Letter."  (ECF No. 1 at 31.)

While not entirely clear, it appears that plaintiff contends prison staff attempted to stop plaintiff from exhausting his administrative remedies by cancelling his third level appeal.

However, as noted above, in order to timely exhaust his administrative remedies, plaintiff was required to file his 602 appeal within thirty days of the August 25, 2013 incident.  This additional, unverified filing confirms that plaintiff intentionally first wrote the warden, believing that such action was timely and appropriate.  Thus, even if plaintiff waited until he transferred to a different prison to file his initial 602 appeal, by then, his appeal was untimely.  Whatever alleged interference occurred after the thirty day period expired is of no consequence because the deadline had already run.

Here, plaintiff consistently insists that he followed proper procedure by first writing to the warden, and his own statement accompanying the 602 appeal confirms that this was his belief.

_____

[5]  Section 3084.9(a)(1) provides exceptions to the regular appeal process based on an emergency: § 3084.9.  Exceptions to the Regular Appeal Process.

(a)  Emergency appeals. Emergency appeals should not be used by inmates or parolees as a substitute for verbally or otherwise informing staff of an emergency situation requiring immediate response.

(1)  When circumstances are such that the regular appeal time limits would subject the inmate or parolee to a substantial risk of personal injury or cause other serious and irreparable harm, the appeal shall be processed as an emergency appeal. Emergency circumstances include, but are not limited to:

(A)  Threat of death or injury due to enemies or other placement concerns.

(B)  Serious and imminent threat to health or safety.

Cal. Code Regs. tit. 15, § 3084.9(a)(1).  As set forth above, however, plaintiff did not identify his 602 appeal as an emergency, and included no facts suggesting the appeal should be processed as an emergency appeal.

1    (ECF No. 1 at 22.)  His insistence is confirmed by his own statement made first on December 7,

2    2013.  A fair reading of his opposition to the motion to dismiss makes clear that he intentionally

3    filed with the warden first and that he mistakenly believed that his appeal was timely-filed.  By

4    the time plaintiff received the warden's response informing plaintiff that he must file a 602

5    appeal, more than 30 days had elapsed from the August 25, 2013 incident, preventing plaintiff

6    from exhausting his administrative remedies in a timely manner.  But plaintiff delayed even

7    further, not submitting his appeal until December 2, 2013.

8          In this case, plaintiff filed an inmate appeal but it was properly cancelled at the third level

9    of review because it was untimely.  To the extent plaintiff contends that unidentified prison staff

10    "would retaliate" or "tried to prevent or stop this complaint," or that defendants allegedly kept

11    plaintiff from filing an appeal after the warden responded, such allegations are relevant to the

12    issue of why the appeal was untimely.  See Williams, 775 F.3d at 1191-92; Sapp, 623 F.3d at

13    822-23.  However, the administrative remedy process provides staff with the discretion to

14    determine whether the inmate had the opportunity to submit a timely appeal and it allows staff to

15    excuse late appeals or to reinstate cancelled appeals, §§ 3084.6(a)(3)-(4), (c)(4).  A cancellation

16    decision may be challenged, § 3084.6(e), and in the cancellation letter dated August 12, 2014,

17    plaintiff was specifically informed in writing as follows:

18

19                Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be

20                resubmitted if the appeal on the cancellation is granted.

21    (ECF No. 1 at 8.)  Plaintiff argues that he appealed to the third level of review, and that the

22    cancellation demonstrates that he exhausted his administrative remedies because he could go no

23    further.  But plaintiff could have appealed the cancellation of his third level appeal, and could

24    have explained his position why prison officials at the first and second levels accepted the

25    appeals, as well as explain his position that the appeal was late because he felt prison staff would

26    retaliate or because prison staff somehow interfered.  Plaintiff did not.  Plaintiff may not benefit

27    from a purported unavailability of administrative remedies where he disregarded the procedural

28    ////

1  rules of which he was on notice and which could have afforded him relief from the cancellation of

2  his appeal.

3      G. Conclusion

4      Plaintiff was required to properly exhaust by complying with the rules and regulations,

5  and there was an administrative remedy process available to him of which he was on notice.

6  Plaintiff failed to properly and timely exhaust that available process. Ngo, 548 U.S. at 90-91

7  (prisoner does not satisfy the PLRA administrative exhaustion requirement by filing an untimely

8  or otherwise procedurally defective administrative appeal); Cal. Code Regs. tit. 15,

9  § 3084.6(c)(4), (e). Plaintiff's failure to timely exhaust his administrative remedies as to the

10  instant claims are clear from the exhibits to the original complaint. Thus, this action must be

11  dismissed without prejudice. See City of Oakland, Cal. v. Hotels.com LP, 572 F.3d 958, 962 (9th

12  Cir. 2009) ("[F]ailure to exhaust administrative remedies is properly treated as a curable defect

13  and should generally result in a dismissal without prejudice."); see also Albino, 747 F.3d at 1170

14  ("Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim").

15  III. Order and Recommendation

16      Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike plaintiff's sur-

17  reply (ECF No. 30) is granted; and

18      IT IS RECOMMENDED that defendants' motion to dismiss (ECF No. 25) be granted,

19  and this action be dismissed without prejudice.

20      These findings and recommendations are submitted to the United States District Judge

21  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

22  after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties. Such a document should be captioned

24  "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

25  objections shall be served and filed within fourteen days after service of the objections. The

26  ////

27  ////

28  ////

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  August 20, 2015

4

5  _____
   KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

6  /vaug2235.mtd.fte

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28